UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
CHRISTOPHER BATES,

Plaintiff,

- against -

**MEMORANDUM AND ORDER**

24 Civ. 3223 (NRB)

THE CITY OF NEW YORK, DYLAN GILLIAM, FRANKELEY LIZ, in their individual and official capacities,

Defendants.
--------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Christopher Bates ("Bates") brought this action on April 28, 2024, against the City of New York (the "City"), Dylan Gilliam ("Gilliam"), and Frankeley Liz ("Liz" and, together with Gilliam and the City, "defendants") pursuant to 42 U.S.C. § 1983. ECF No. 1. Bates alleges that Gilliam and Liz, both Officers in the New York City Police Department ("NYPD"), wrongfully arrested him after he refused to leave the 14th police precinct in Midtown Manhattan. On November 3, 2022, Bates entered the precinct and requested the numbers of criminal complaint reports that listed himself as the victim.[1] After Officer Gilliam provided him with a few -- but not all -- of the relevant criminal complaint numbers, Bates verbally expressed frustration. In response, Officers

[1] Members of the public can file criminal complaints with the NYPD to report alleged crimes, and each complaint is assigned a number. Bates was requesting the numbers for criminal complaints, presumably filed by him, which named Bates as the victim of an alleged crime. ECF No. 45-13 ("Defs' 56.1") ¶¶ 3-4; ECF No. 48 ("Pl's 56.1") ¶¶ 3-4.

Gilliam and Liz ordered him to leave the precinct. When Bates repeated his request for more complaint numbers, Officers Gilliam and Liz pushed Bates towards the front door and through a vestibule, then handcuffed him on the precinct steps and placed him under arrest. On November 4, 2022, Bates was arraigned on charges of trespass, obstruction of governmental administration, and resisting arrest, all of which were subsequently dropped.

Bates sued defendants for false arrest, malicious prosecution, denial of the right to a fair trial, First Amendment retaliation, failure to intervene, and a number of state law claims. See ECF No. 23 ("Amended Complaint" or "AC"). Now pending before the Court is defendants' motion seeking summary judgment as to all of Bates' claims. ECF No. 44; see also Fed. R. Civ. P. 56(a). For the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Before discussing the arguments raised by the parties, the Court will review the circumstances that led to this lawsuit. The undisputed facts herein are derived from the parties' Rule 56.1 statements[2] and admissible evidence submitted in connection with the motion, including footage from the officers' body worn cameras.

[2] In support of its motion for summary judgment, defendants submitted a statement of facts pursuant to Local Rule 56.1, Defs' 56.1. Bates submitted its own statement of facts and a response, Pl's 56.1, and defendants submitted a response, ECF No. 53-1 ("Defs' 56.1 Response").

In deciding the motion, the Court has only considered the parties' Rule 56.1 statements insofar as they are accompanied by citations to admissible evidence in the record. See Fed. R. Civ. P. 56(c). Similarly, the Court has "disregard[ed] . . . responses that are unresponsive to the asserted fact, and any improper argumentation." Julian v. MetLife, Inc., No. 17 Civ. 957 (AJN), 2021 WL 3887763, at *6 (S.D.N.Y. Aug. 31, 2021) (internal quotation marks omitted).

## I. Bates' Visit to 14th Precinct

On the evening of November 3, 2022, Bates entered the 14th Precinct in Midtown Manhattan. Bates was seeking criminal complaint numbers in connection with various lawsuits and/or other legal matters he was pursuing.[3] Pl's 56.1 ¶ 4; Defs' 56.1 ¶ 4. According to Bates, he had contacted the NYPD Freedom of Information Law ("FOIL") unit and was told that "he could obtain a NYPD police report much faster in person [at a police precinct] (within an hour so) rather than through an online FOIL request

[3] The parties dispute whether Bates only requested criminal complaint numbers in which he was named as a victim, or whether instead he requested all criminal complaint numbers associated with him, including some listing him as a perpetrator. See Defs' 56.1 ¶ 11; Pl's 56.1 ¶ 11 ("[Bates] has never stated that he sought complaint report numbers in which he was deemed the perpetrator."). The parties also dispute how many criminal complaint numbers Officer Gilliam found when he searched the OMNIFORM database on November 3, 2022. See Pl's 56.1 ¶¶ 73-76. However, it is undisputed that Bates was not provided all the criminal complaint numbers listing him as a victim. See Reply at 6. As the Court will explain, these disputes are not determinative of any legal issues in the case, and thus by themselves do not preclude summary judgment. Am. Council of Blind of New York, Inc., 495 F. Supp. 3d at 228 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

(which could take up to six months)[.]" Pl's 56.1 ¶ 4; see also Defs' 56.1 Response ¶¶ 3-4.

After entering the precinct, Bates spoke with Officer Gilliam, who entered Bates' name, date of birth, and address into the NYPD's "OMNIFORM" system for criminal complaints. Defs' 56.1 ¶¶ 8-9; Pl's 56.1 ¶¶ 8-9. Officer Gilliam provided Bates with at least two criminal complaint numbers. See ECF No. 47-7 (still image of the print out and "post-it" note handed to Bates). It is undisputed that Officer Gilliam failed to provide additional criminal complaint numbers, possibly due to the eccentricities of the OMNIFORM search system. ECF No. 45-4 ("Gilliam Dep. Tr.") at 17:2-13 (A: "When you look up in the Omni system, it's not the greatest system. It's more of an exact system, so if your name, address, date of birth, phone number or anything is misspelled, it won't recall."); see also Defs' 56.1 ¶ 10; Pl's 56.1 ¶ 10; Reply at 6. In fact, as of November 3, 2022, there were as many as 31 criminal complaint reports listing Bates as a victim. See ECF No. 47-2 ("Entity Report" listing criminal complaints with Bates as the victim); Defs' 56.1 Response ¶ 70 ("[it] is undisputed that . . . on November 3, 2022 thirty one complaint reports existed where Plaintiff was listed as a victim").

**II. Bates' Arrest**

After handing Bates some (but not all) of the relevant criminal complaint numbers, Officer Gilliam left Bates to attend

to another complainant in a different room. Defs' 56.1 ¶¶ 15-16; Pl's 56.1 ¶¶ 15-16. Bates remained at the precinct front desk to speak with an unnamed officer on duty at the time. Defs' 56.1 ¶ 19; Pl's 56.1 ¶ 19. At some point during his interaction with Gilliam and/or the desk officer, Bates became frustrated and "stated that the paper [with the 'post-it' note] was inadequate because there were far more complaint numbers in which he was a named victim." Pl's 56.1 ¶¶ 65-66; Defs' 56.1 ¶¶ 65-66.

Officer Gilliam testified that while he was in the other room, he heard Bates "raising his voice" at the desk officer, at which time Gilliam activated his body worn camera, and approached Bates. See Defs' 56.1 ¶¶ 19-21; Pl's 56.1 ¶¶ 19-21; see also ECF No. 45-6 (DEF00088) ("Gilliam BWC Footage"). Officer Liz also walked to the front desk and activated his body worn camera. Defs' 56.1 ¶ 21; Pl's 56.1 ¶ 21; see also ECF No. 45-7 (DEF00089) ("Liz BWC Footage"). Officers Gilliam and Liz testified that Bates "argued" with them about the numbers more and began to "raise his voice." See Defs' 56.1 ¶¶ 22-25; Pl's 56.1 ¶¶ 22-25. In response to this, both officers ordered Bates to leave. Gilliam BWC Footage at 1:52-59; Liz BWC Footage at 1:52 (Liz: "You're going to get put outside.").

Rather than immediately comply with the officers' instructions, Bates continued to argue for several seconds and appeared to drop the paper with the "post-it" note, which the desk

officer handed back to him. Liz BWC Footage at 2:01-10. Instead of continuing to speak with Bates, both officers initiated physical contact and began pushing him towards the door.[4] See Gilliam BWC Footage at 2:15; Liz BWC Footage at 2:14. As Bates continued to protest, Gilliam and Liz pushed Bates through the vestibule and onto the steps of the precinct. See Gilliam BWC Footage at 2:15-53; Liz BWC Footage at 2:14-51. In the body worn camera footage, while being pushed by the officers, Bates slightly raises his arms and at another point appears to grab the side of the door to the vestibule. See Gilliam BWC Footage at 2:16, 2:29. The parties vigorously dispute how to interpret Bates' gestures captured from the shaky body worn camera footage. See, e.g., Defs' 56.1 ¶ 35 (Bates "push[ed] back"); Pl's 56.1 ¶ 35 ("Plaintiff's arms are not swinging or pushing; one hand grips the paper while the other is restrained despite being shoved; he never makes a fist or acts aggressively; he never makes threats."). After Bates was through the second precinct door and on the steps, defendants, with the assistance of several more officers, brought Bates to the wall of the precinct and handcuffed him. See Gilliam BWC Footage at 2:54-3:15; Liz BWC Footage at 2:54-58 (unknown officer saying "Put your hands behind your fucking back" and "now you're not going

---

[4] While not directly relevant to the "lawfulness" of the officers' order, the officers did not provide Bates with much time to process and then comply with the order.

anywhere"); see also ECF No. 45-8 (DEF00090) ("Jackson BWC Footage").

### III. Subsequent Events

Bates was arraigned on November 4, 2022, the day after his arrest, and charged with trespass, obstructing governmental administration, and resisting arrest. Defs' 56.1 ¶ 47; Pl's 56.1 ¶ 47. It is undisputed that "after being released from custody on November 4, 2022, Plaintiff went back to the 14th Precinct . . . and when he was there he renewed his request for complaint report numbers in which he was the named victim." Pl's 56.1 ¶ 69; Defs' Response 56.1 ¶ 69. At that time, "[a]n officer gave him a lengthy list of numbers, printed in spreadsheet form." Pl's 56.1 ¶ 69; Defs' Response 56.1 ¶ 69. Bates appeared in court three times before the charges were dropped on February 3, 2023. Defs' 56.1 ¶¶ 48-49; Pl's 56.1 ¶¶ 48-49.

## PROCEDURAL HISTORY

Bates brought this action on April 28, 2024. ECF No. 1. On August 7, 2024, the case was diverted to mediation pursuant to Local Civil Rule 83.10 (Plan for Certain Section 1983 Cases against the City of New York). On October 31, 2024, the mediator reported that "mediation in this case was held but was unsuccessful in resolving any issue in the case." ECF No. 17. The Court held a conference on November 11, 2023. On December 6, 2025, the Court approved a case management plan, ECF No. 22, and Bates filed an

amended complaint. See Amended Complaint. Officer Gilliam and the City answered on January 17, 2025, ECF No. 24, and Officer Liz answered on March 28, 2025, ECF No. 29. On August 12, 2025, the Court held a conference call on a discovery dispute, in which it denied Bates' request for a Rule 30(b)(6) deposition related to NYPD obligations to store and/or produce criminal complaint numbers.[5] On November 12, 2025, the Court denied a related request, in which Bates requested admissions from defendants as to the existence of "written or unwritten NYPD policies" regarding criminal complaint numbers, and declared discovery closed. ECF No. 38.

On December 11, 2025, following receipt of several letters submitted pursuant to this Court's Individual Rule 2(B), the Court determined that defendants could bring their motion for summary judgment without the need for a pre-motion conference. ECF No. 41. Defendants filed their motion on January 22, 2026. ECF Nos. 44, 44-1 ("Defs' 2(C) Letter"), 45 ("O'Connor Decl."), 46 ("Mot."); see also Defs' 56.1. On February 23, 2026, Bates filed his opposition, see ECF Nos. 47 ("Joubin Decl."), 49 ("Opp."), 50 ("Pl's 2(C) Letter"); see also Pl's 56.1, and on March 16, 2026

[5] The Court concurred with defendants' position that the requested deposition was unwarranted because "the lawfulness of the order [to leave the precinct] was not [contingent] on complaint reports that Plaintiff did or did not receive." ECF No. 33 at 2.

defendants replied, ECF No. 53 ("Reply"); see also Defs' 56.1 Response.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). Factual disputes that are irrelevant or unnecessary are disregarded. Anderson, 477 U.S. at 248.

The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). When moving against a party who bears the ultimate burden of proof at trial, the movant meets this burden by pointing to an absence of evidence supporting an essential element of the nonmoving party's claim. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73 (2d Cir. 2016).

Once the moving party has satisfied its initial burden, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). The non-movant "must demonstrate more than some metaphysical doubt as to the material facts[.]" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citation and internal quotation marks omitted).

## DISCUSSION

Defendants move for summary judgment on Bates' federal claims of (i) false arrest, (ii) malicious prosecution, (iii) denial of the right to a fair trial, (iv) First Amendment retaliation, and (v) failure to intervene brought under 42 U.S.C. § 1983. AC ¶¶ 32-50. Defendants also move for summary judgment on Bates' New York state law claims of (i) malicious prosecution, (ii) unreasonable search and excessive force pursuant to New York Administrative Code § 8-803, (iii) negligent hiring, retention, or supervision, and (iv) respondeat superior. Id. ¶¶ 51-66. The Court will first consider whether summary judgment is warranted as to the federal claims, then consider the state law claims.

### I. Federal Section 1983 Claims

#### a. False Arrest

Defendants argue that summary judgment is appropriate on Bates' false arrest claim because Officers Gilliam and Liz had

"probable cause" to arrest Bates for the crime of trespass or, in the alternative, obstruction of governmental administration ("OGA"). Mot. at 4-11. It is well-established that "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause" to arrest plaintiff for any crime. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "Where the question of whether an arresting officer had probable cause is predominantly factual in nature, . . . the existence vel non of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Thus, the Court must consider whether there is a genuine dispute of material fact as to whether Officers Gilliam and Liz had probable cause to arrest Bates for either trespass or OGA.

**i. Trespass**

"A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05 (McKinney). "A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." N.Y. Penal Law § 140.00(5) (McKinney). Thus, to demonstrate probable cause for trespass, "[d]efendants must show that (1) there was a lawful order excluding Plaintiff from the property; (2) that the order

was communicated to him by a person with authority to give the order; and (3) that Plaintiff defied the order." Yorzinski v. City of New York, 175 F. Supp. 3d 69, 77 (S.D.N.Y. 2016) (citing Carpenter v. City of New York, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013)). There is no dispute that Gilliam and Liz ordered Bates to leave, Defs' 56.1 ¶ 25; Pl's 56.1 ¶ 25, and that Bates refused to do so, Defs' 56.1 ¶ 26; Pl's 56.1 ¶ 26. What is disputed, however, is whether the officers' order was "lawful" under the first prong of the test. Yorzinski, 175 F. Supp. 3d at 77; see also People v. Leonard, 62 N.Y.2d 404, 411 (1984) (For an order to be "lawful" "the particular order of exclusion [must have] a legitimate basis and . . . considering the nature and use of the subject property, its enforcement [can] not unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct.").

Defendants allege that Bates was "yelling at the officers [that] they were not giving him all of the complaint numbers," "raising his voice and berating the officers," and "was clearly being disruptive." Mot. at 6-7. Gilliam testified that he heard Bates "raising his voice" at the desk officer, at which time Gilliam and Liz activated their body worn cameras, and approached Bates.[6] See Defs' 56.1 ¶¶ 18-21; Pl's 56.1 ¶¶ 18-21. Gilliam and

[6] To the extent defendants argue Bates was disruptive before they activated their cameras, such a conclusion rests on clear credibility determinations not appropriate at the summary judgment stage. On the one hand, Bates' behavior

Liz also alleged that Bates raised his voice to them, after which they ordered Bates to leave. Gilliam BWC Footage at 2:07; Liz BWC Footage at 2:10. Throughout his papers, Bates vigorously disputes that he raised his voice, yelled, or otherwise menaced the officers. Pl's 56.1 ¶ 19 ("Deny. Plaintiff was . . . not yelling or raising his voice."). The available video footage does not clarify this debate as to whether Bates' was "yelling" or "raising his voice" at any point before the trespass order was given. Gilliam BWC Footage at 0:00-2:07; Liz BWC Footage at 0:00-2:10. Moreover, while it is true that Bates repeatedly insists that the officers have not given him a full list of relevant complaint numbers, it is debatable if his behavior could be characterized as "berating." See Liz BWC Footage at 1:13-1:33 (Bates said, inter alia, that "This is not a legitimate report number" and "I realize the numbers increase."); 1:49-1:51 (Bates: "I have the right to be here."). Bates' attitude could accurately be described as exasperation or frustration. Under these circumstances, the Court finds that there is a genuine dispute of fact as to whether Bates' behavior was "disruptive" such that an order to leave an area otherwise open to the public was "lawful."[7]

---

was apparent enough that the officers heard him from another room and came back to the front desk. However, Bates disputes that he was yelling, characterizing the interaction as conversational, albeit intense.

[7] Defendants insist that Bates had conceded he was disruptive because Bates' opposition describes the interaction as "tense" "agitated" "argumentative" or "disput[atious]." Reply at 4 (citing Opp. at 4). However, the Court does not

Defendants also justify the officers' trespass order by citing the fact that Bates "reached over the precinct desk to grab something." Mot. at 6. Bates is seen at various points placing his arms on the high (shoulder height) wooden precinct desk. See, e.g., Liz BWC Footage at 1:38. However, the most accurate characterization of this behavior is that Bates is "resting" or "leaning" on the high desk rather than "reaching" over it. There is no allegation that Bates was "reaching" before the Officers' body worn cameras were activated. And the only point in the video footage where Bates apparently "reaches" is when he appears to drop the piece of paper and attached "post-it" note given to him by the desk officer. Id. at 2:01-2:10. Bates gesticulates to the piece of paper over the table, and the desk officer hands it back to him. Id. Even if this behavior was intentional or aggressive, which is by no means clear, it took place after officers Gilliam and Liz had already ordered Bates to leave. See id. at 1:52 (Liz: "You're going to get put outside.").

Ellis v. La Vecchia is instructive as to the "lawfulness" of the officers' order. 567 F. Supp. 2d 601, 606 (S.D.N.Y. 2008) (Swain, J.). In that case

> Ellis had gone to the 71st police precinct on that day to inquire as to why two police officers had come to his home that morning. Ellis approached the telephone switchboard operator to inform her why he was there.

believe this constitutes an admission by Bates that he was being so disruptive that an order to vacate a space otherwise open to the public was "lawful."

> [Officer] La Vecchia then approached Ellis and, after some conversation, told him to leave the precinct. Ellis re-entered the precinct at least once after being told to leave, and La Vecchia arrested him outside the precinct. La Vecchia handcuffed Ellis . . . then issued two summonses to Ellis, for disorderly conduct and trespass[.]

Id. at 604. Ellis brought claims for, inter alia, "false arrest" and "malicious prosecution," and La Vecchia defended on the ground that there was probable cause to arrest Ellis for trespass. Id. at 607. At trial, a jury found that there was no probable cause to arrest Ellis for trespass. Id. Then, in an order denying a post-verdict motion for judgment, the court rejected defendants' argument that "La Vecchia's order to leave the precinct was lawful 'because plaintiff was disrupting the operations of the precinct.'" Id. The court explained that such arguments "fail[] to construe all of the evidence in the light most favorable to Ellis" and failed to credit "Ellis' trial testimony, . . . [which] indicated that he was not causing a disturbance at the precinct; rather, he was peaceably making an inquiry of the telephone operator when La Vecchia . . . ordered him to leave." Id.

The Court acknowledges that there must be an upper limit to how long police officers are obligated to attend to an individual person who visits a police station. Although police stations are open to the public, there is no doubt that individuals who monopolize the attention of a busy department or disrupt the

everyday work of police officers may eventually be asked to leave. However, at the summary judgment stage, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gilman, 826 F.3d at 73. Given that Bates was present in the police station for approximately twenty-five minutes, ECF No. 45-3 ("Bates Dep. Tr.") at 76:5-10; Gilliam Dep. Tr. at 21:18-20, that the station was not obviously busy at 8 P.M., see Gilliam BWC at 00:19, and the disputed facts about whether Bates was disruptive, the Court cannot resolve this issue as a matter of law. Here, as in Ellis, a reasonable jury would be entitled to find that Bates was making a "peaceable," albeit firm, inquiry of the desk officer, and that his behavior was neither threatening nor sufficiently disruptive to warrant his removal.

The cases cited by defendants are not to the contrary. See Mot. at 5; Reply at 4-5. People v. Jackson was decided after a "nonjury trial," and not on a motion for summary judgment. 46 Misc. 3d 142(A), at *1 (2d Dep't 2015) (upholding the trial court's factual findings because "we accord great deference to . . . the finder of fact"). Here, the Court is not the finder of fact and will properly assign such determinations to the jury. People v. Reape is also distinguishable because in that case an individual disrupted the precinct by "yelling and screaming and adamantly demand[ing] to see a particular detective, [such that the arresting

officer] could not know whether the defendant intended to bring harm to a Police Department employee or cause some other type of harm." 22 Misc. 3d 615, 619 (Crim. Ct. Kings Cnty. 2008) (denying a criminal defendant's motion to dismiss a trespass charge for "facial insufficiency"). Finally, People v. Bembry is distinguishable because the trespasser, who entered an Oneida County municipal building, was "in an intoxicated condition," "smelled of alcohol," and was "very belligerent," facts which are not present in this case. 128 Misc.2d 243, 243-44 (City Ct. of Utica 1985).

**ii. Obstruction of Governmental Administration**

Defendants also argue[8] that there was probable cause to arrest Bates for "obstruction of governmental administration." Mot. at 10-11. A person commits OGA when "he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ." N.Y. Penal Law § 195.05 (McKinney). In other words, OGA requires "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4)

[8] Defendants' arguments on this point are made in the separate "malicious prosecution" section, in which they argue defendants had "arguable probable cause," rather than "probable cause." Mot. at 10-11. However, because these same arguments could be interpreted as supporting "probable cause" as well as "arguable probable cause," the Court addresses them here.

by means of intimidation, force or interference." Antic v. City of New York, 740 F. App'x 203, 206 (2d Cir. 2018) (summary order) (quoting Cameron v. City of New York, 598 F.3d 50, 68 (2d Cir. 2010)).

The Court finds there is a genuine dispute of material fact as to whether Bates' behavior supported probable cause for OGA. OGA requires interference with an "official function." Antic, 740 F. App'x at 206. If the "official function" being served by the officers was the day-to-day business of the precinct, the Court cannot conclude that Bates was sufficiently "disruptive" such that a charge for OGA was justified. See supra Discussion Section I.a.i.; see also Kass v. City of New York, 864 F.3d 200, 209 (2d Cir. 2017) (conduct must be "inappropriate and disruptive" to justify a charge for OGA).

To the extent Bates spun around or gripped the frame of the door after the trespass order was given, these actions cannot constitute OGA either. It is well-established that "an arrest [or other action by officers] is only an 'official function' under New York law if it is lawful—that is, if it is made with probable cause." Cameron, 598 F.3d at 68. In Cameron, one of the plaintiffs, Higginbottom, was charged with OGA on the basis that he had interfered with the arrest of Cameron. Id. The Second Circuit explained that "[f]or an arrest to be an official function, it must be lawful and supported by probable cause. Therefore, if

the Officers did not have probable cause to arrest Ms. Cameron, they could not have had probable cause to arrest Ms. Higgenbottom for obstructing their efforts to effect Ms. Cameron's arrest." Id.

The principle in Cameron can be applied to the officers' trespass order and arrest of Bates. For these actions to be an "official function," the trespass order leading to the arrest must have been "lawful," i.e. supported by probable cause. See Cameron, 598 F.3d at 68 ("Appellees essentially argue that any arrest [or other action], lawful or otherwise, by a police officer is an 'official function.' But this proposition finds no support in New York case law."). As the Court explained, a reasonable jury could find that there was no probable cause to arrest Bates for trespass. By extension, there was no "official function" being served as the officers ordered and pushed Bates from the precinct and, therefore, no probable cause for OGA.

For the preceding reasons, defendants' motion for summary judgment on Bates' false arrest claim is denied.

**b. Malicious Prosecution**

Next, defendants move for summary judgment on Bates' malicious prosecution claim. Mot. at 9-12. "In the absence of federal common law, the merits of a claim for malicious prosecution under § 1983 are governed by state law." Dufort v. City of New York, 874 F.3d 338, 350 (2d Cir. 2017). "In order to state a claim

for the tort of malicious prosecution under New York State law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995)).

Defendants argue they are entitled to summary judgment because there was probable cause to charge Bates with trespass, OGA, and/or resisting arrest. Mot. at 10-13. With respect to the trespass and OGA charges, defendants' contentions are rejected for the same reasons stated supra, Discussion Section I.a. Although the malicious prosecution analysis, unlike the analysis for false arrest, "account[s] for any new information learned subsequent to an arrest," Reply at 7 (citing Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order)), defendants have not shown that there was any "new information" following the arrest that bolstered an inference of probable cause.

Defendants also argue that Gilliam and Liz had "probable cause to charge Plaintiff for resisting arrest." Mot. at 12, 14. This point is easily rejected. Probable cause for resisting arrest cannot exist if the arrest itself was unlawful. Cameron, 598 F.3d at 68 (quoting People v. Stevenson, 31 N.Y.2d 108, 111 (1972))

("[T]he crime of resisting arrest does not occur if the arrest is illegal or unlawful."); Murphy, 118 F.3d at 948 ("[A]s a matter of law, an arrest [or subsequent charge] for resisting arrest is not lawful unless the arrest that was supposedly resisted was itself authorized, either by way of an arrest warrant or by the existence of probable cause."). "In addition, the existence of a factual dispute about whether officers had probable cause to arrest the plaintiff for an underlying offense precludes summary judgment on the plaintiff's claim that he was improperly arrested [or charged] for resisting arrest." Hanson v. New York City, No. 15 Civ. 1447 (MKB), 2018 WL 1513632, at *12 (E.D.N.Y. Mar. 27, 2018) (internal citations and quotation marks omitted). As the Court has explained, a reasonable jury could conclude that Officers Gilliam and Liz lacked probable cause to arrest Bates for trespass, OGA, or any other crime. Thus, a reasonable jury could also conclude that the resisting arrest charge was improperly brought.[9]

For the preceding reasons, defendants' motion for summary judgment on Bates' malicious prosecution claim is denied.

---

[9] Defendants also argue that the resisting arrest charge resulted in "no independent deprivation of liberty" above and beyond the two other charges for trespass and OGA. Mot. at 12-13. This argument is irrelevant, given that a reasonable jury could find there was no probable cause to charge Bates for trespass or OGA. See Rohman v. New York City Transit Auth. (NYCTA), 215 F.3d 208, 216 (2d Cir. 2000) (required post-arraignment appearances in court are sufficient to constitute a "deprivation of liberty" for purposes of a malicious prosecution claim).

**c. Qualified Immunity**

Next, defendants argue that even if there was no probable cause to arrest or charge Bates, Gilliam and Liz are entitled to "qualified immunity" because they had "arguable probable cause." Mot. at 7-9, 13-14.

"A police officer has qualified immunity from a malicious prosecution claim if the officer had 'arguable probable cause' to charge the plaintiff with the crimes at issue." Tompkins v. City of New York, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (citation omitted); see also Meyers v. City of New York, No. 14 Civ. 9142 (ALC), 2017 WL 4803922, at *1 (S.D.N.Y. Oct. 20, 2017) (qualified immunity standard is essentially the same for false arrest as malicious prosecution). "Arguable probable cause" exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Menon v. Frinton, 31 F. App'x 735, 736 (2d Cir. 2002) (citation omitted). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause[;] [t]he essential inquiry . . . is whether it was objectively reasonable for the officer to conclude that probable cause existed." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007).

"The arguable probable cause standard is 'more favorable to the officers' than the ordinary standard used to determine probable

cause." Tompkins, 50 F. Supp. 3d at 435 (quoting Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012)). However, "[t]he Second Circuit has 'repeatedly held that disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) [are] the province of the jury.'" McCrae v. Town of Brookhaven, 759 F. Supp. 3d 372, 389 (E.D.N.Y. 2024) (quoting Moran v. Greco, 2024 WL 1597624, at *4 (2d Cir. Apr. 12, 2024) (summary order)) (alterations in original). Here, there exist genuine disputes about whether Bates raised his voice or otherwise behaved in a threatening matter, and whether the officers' perception that he did so was "reasonable."[10] See, e.g., Defs' 56.1 ¶¶ 19-20 ("Officer Gilliam perceived Plaintiff to be raising his voice against the desk officer") (emphasis added); Pl's 56.1 ¶ 19 ("Deny. Plaintiff was . . . not yelling or raising his voice."); see also McCrae, 759 F. Supp. 3d at 389 (Because the officers' arrest of plaintiff was "largely based around the perceived validity of [a] lease . . . , as well as whether the home appeared furnished . . . [t]his precludes this Court from

10 Although there is body worn camera footage of some of the incident in question, the officers only activated their cameras two minutes before they ordered Bates to leave the precinct. Moreover, what limited video footage does exist is open to interpretation. Given these circumstances, the Court believes there "are unresolved factual issues which prevent an early disposition of the defense." Tompkins, 50 F. Supp. 3d at 435 (quoting Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir.2012)).

finding that the officers are entitled to qualified immunity at summary judgment.”).

For the preceding reasons, the Court concludes Officers Gilliam and Liz are not entitled to qualified immunity as a matter of law because there remain genuine disputes of material fact that should be resolved by a jury.

**d. Denial of the Right to a Fair Trial**

Next, the Court must consider whether there is a genuine dispute of material fact as to whether Gilliam fabricated evidence in violation of Bates’ constitutional right to a fair trial. Mot. at 14-15.

“The claim of denial of the right to a fair trial due to fabricated evidence stems from the Sixth Amendment and the Due Process clauses of the Fifth, Sixth, Fourteenth Amendments of the U.S. Constitution.” Ying Li v. City of New York, 246 F. Supp. 3d 578, 627 (E.D.N.Y. 2017). A successful claim requires that “an arrestee must prove by a preponderance of the evidence that [1] the officer created false information, [2] the officer forwarded the false information to prosecutors, and [3] the false information was likely to influence a jury's decision.” Garnett v. Undercover Officer C0039, 838 F.3d 265, 280 (2d Cir. 2016). Put simply, a police officer fabricates evidence when he “creates false information likely to influence a jury’s decision and forwards

that information to prosecutors." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).

In his opposition brief, Bates argues that he was charged based on a post-arrest report by Officer Gilliam, which stated that Bates "flailed his body," "pushed [back]," and "twisted his hands away." Opp. at 13 (quoting AC ¶ 23); see also ECF No. 45-11 ("Charging Document") at 1. However, no reasonable jury could conclude that such a report constituted "fabricated" evidence. The report constitutes Gilliam's subjective description of Bates' movements as Bates was pushed towards the door. See Defs' 56.1 ¶ 35; Charging Document; Gilliam BWC Footage at 2:16, 2:18. A police officer is not guilty of fabricating evidence in violation of the Constitution by using subjective descriptors with which plaintiff disagrees. See Alba v. City of New York, 23 Civ. 8619 (LAK)(BCM), 2024 WL 5359912, at *30 n.40 (S.D.N.Y. Aug. 24, 2024) (constitutional due process "demands only that the evidence be described accurately, not that it be colored as the arrestee would prefer").

Bates also alleges that Gilliam lied when he said the officers had "exhaust[ed] efforts to provide service" and found "only one" complaint report listing Bates as a victim. Opp. at 13-14; see also Pl's 56.1 ¶ 73; Defs' 56.1 Response ¶ 73. At the outset, the Court agrees with defendants that these allegations did not form the basis of Bates' fabrication claim as stated in the Amended

Complaint. See AC ¶ 23 (listing "flailing" and related descriptions as the basis for Bates' fabrication claim). But even if this argument were properly before the Court, it would be rejected. As defendants observe, "there is no mention [of] Officer Gilliam [discussing] the complaint report numbers in the actual charging document." Reply at 2 (citing Charging Document at 1). For a fabricating evidence claim to survive, plaintiff must prove that defendant "forward[ed] that information to prosecutors." Garnett, 838 F.3d at 280. The charging document describes how Bates allegedly of "reached" over the desk or "flailed," and makes no mention of criminal complaint reports or how many were or were not provided. Charging Document at 1.

Even if other documents discussing the complaint numbers, such as the arrest report[11] or activity log,[12] were provided to prosecutors, Bates could not show they were "likely to influence a jury's verdict[.]" Garnett, 838 F.3d at 280. Defendants do not dispute that Gilliam did not provide all the reports in the database listing Bates as a victim. See Reply at 5-6. However, that fact -- even if misrepresented -- could not "influence a jury's verdict" because the crimes of trespass, OGA, and resisting

[11] See ECF No. 47-3 (stating officers "exhaust[ed] efforts to provide services").

[12] See ECF No. 47-4 (stating the report was "the only one" Gilliam could find).

arrest do not ask whether the alleged perpetrator had a good reason to be upset. The relevant question for the jury is not whether Bates received all the numbers that were available, but rather whether Bates' behavior was disruptive such that he could be ordered from the precinct. See supra Discussion Section I.a., I.b. By way of analogy, if a restaurant customer orders a cheeseburger and french fries but only receives a cheeseburger, he may politely complain. But if he screams or threatens the server who misplaced his order, he can legitimately be asked to leave. The validity of that trespass order would not turn on whether or not the customer received french fries. Instead, it would depend on whether the customer disrupted the operations of the restaurant.

For the preceding reasons, the Court grants summary judgment for defendants on Bates' fabrication of evidence claim.

**e. First Amendment Retaliation**

Next, defendants move for summary judgment on Bates' First Amendment retaliation claim. See AC ¶ 49 (alleging that "defendants violently arrested Plaintiff" and "[i]n doing so, the individual defendants chilled Plaintiff's First Amendment rights").

To prevail on his First Amendment retaliation claim, Bates "must prove: (1) he has an interest protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by his exercise of that right; and (3) Defendants' actions

effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Defendants argue that Bates cannot demonstrate that his speech was "chilled" because he returned to the very same police precinct the day after his arrest and repeated the same request for criminal complaint numbers. Mot. at 17; Reply at 8-9. Bates concedes "he returned to the precinct the following day" and obtained the complaint numbers, but argues this fact is "legally irrelevant." Opp. at 16.

"Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Curley, 268 F.3d at 73. This principle has been applied in cases where arrestees continued to speak after the arrest that allegedly "chilled" their speech. Id. (finding no First Amendment "chilling" because "despite plaintiff's charge that he was arrested in retaliation for his comments made during the 1993 mayoral campaign, he continued his 1994 campaign for village trustee even after the arrest and ran again for village public office in 1995"); see also Singer, 63 F.3d at 120 (upholding the dismissal of a First Amendment claim because plaintiff, a newspaper publisher, continued to publish similar articles even after his arrest); Sloup v. Loeffler, No. 05 Civ. 1766 (JFB) (AKT), 2008 WL 3978208, at *22 (E.D.N.Y. Aug. 21, 2008) (granting a motion to dismiss because "the record demonstrates that plaintiff

vigorously exercised his First Amendment rights subsequent to all of the allegedly retaliatory conduct plaintiff has alleged"). The Second Circuit has also applied the principle in cases where a plaintiff was arrested for trespass but then returned or petitioned to return to same location. See Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008) ("It is abundantly clear from the record that Williams[] . . . was unimpaired by [defendants'] allegedly punitive conduct" because "[f]ollowing his arrest for trespass, Williams requested that the Town Supervisor review his year-long exclusion from the [Civic] Center."). Here, it is undisputed that Bates returned to the 14th Precinct on November 4, 2022, the day after his arrest, "renewed his request for complaint report numbers in which he was the named victim," and received "a lengthy list of numbers." Pl's 56.1 at ¶ 69; see also Defs' 56.1 Response ¶ 69. Given these facts, no reasonable jury could conclude that Bates' speech was "actually chilled." Curley, 268 F.3d at 73.

In an effort to preserve his First Amendment retaliation claim, Bates points to Dorsett v. County of Nassau for the proposition that "arrest or exclusion from a public facility constitutes an adverse action sufficient to deter a person of ordinary firmness from exercising protected speech." Opp. at 16 (citing 732 F.3d 157, 160 (2d Cir. 2013)). But Dorsett does not stand for that proposition. There, the Second Circuit held that

"the County's alleged retaliation did not curtail the Plaintiffs' speech [because] Brewington remained politically active while the settlement was pending and Dorsett maintained her association with Brewington." 732 F.3d at 161 (upholding a district court's dismissal of a First Amendment retaliation claim).

Plaintiff is correct that the court in Dorsett held that a First Amendment retaliation claim may lie if plaintiff can prove "[v]arious non-speech related harms." Dorsett, 532 F.3d at 160. However, as defendants correctly observe, the "concrete harms" cited by the Dorsett court did not include arrests. Reply at 8-9; see also Dorsett, 732 F.3d at 161 (citing "a lost government contract, revoking a border building permit, [or] refusing to enforce a zoning law" as examples of non-speech related "harms"). Other case law makes clear that an arrest or prosecution itself cannot support a First Amendment retaliation claim absent an allegation of chilling. For example, while the plaintiff in Curley was arrested, he was still obligated to show that his speech was "actually" chilled or that he suffered some other "concrete" harm. Curley, 268 F.3d at 73. Moreover, Bates' own Amended Complaint makes no mention of any other "harm" besides the "chill[ing]" of his speech. See AC ¶ 49 ("defendants violently arrested Plaintiff [and] [i]n doing so, the individual defendants chilled Plaintiff's First Amendment rights").

Bates also suggests that his First Amendment claim should be evaluated under the objective standard, which asks if a hypothetical "person of ordinary firmness" would refrain from speaking, in contrast to the "subjective" standard, which asks whether speech was "actually" chilled. Opp. at 16. It is true that courts sometimes apply the objective standard rather than the default subjective rule. For example, prisoners incarcerated in federal or state institutions need only prove chilling under the objective test. See Gill v. Pidlypchak, 389 F.3d 379, 382 (2d Cir. 2004). The same is true for public employees who suffer adverse employment consequences for their speech. McGuinn v. Smith, No. 11 Civ. 4761 (CS), 2015 WL 12731755, at *5 (S.D.N.Y. Aug. 28, 2015).

This case falls under neither of these exceptions. "[A] plaintiff who, like [Mr. Bates], . . . [i]s a private citizen (as opposed to a public employee or prisoner) must show that [his] speech has actually been chilled as a result of the retaliatory conduct." Troy v. City of New York, No. 13 Civ. 5082 (AJN), 2014 WL 4804479, at *7 (S.D.N.Y. Sept. 25, 2014), aff'd, 614 F. App'x 32 (2d Cir. 2015) (emphasis added); see also Avgerinos v. Palmyra-Macedon Cent. Sch. Dist., 690 F. Supp. 2d 115, 132 (W.D.N.Y. 2010) (same). Bates has failed to do so.

For the aforementioned reasons, the Court grants defendants' summary judgment motion on Bates' First Amendment retaliation claim.[13]

**f. Failure to Intervene**

Defendants argue that "[t]o recover on a failure to intervene claim, a plaintiff must show that an officer who fails to intercede may be liable for a preventable harm caused by the actions of other officers, if he or she observes or has reason to know that those other officers violated someone's constitutional rights." Mot. at 18 (citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). The Court agrees with defendants that "Officer[s] Liz and Gilliam are the only named defendants, which is fatal to the failure to intervene claim." Mot. at 18 (citing Guarniere v. City of New York, 21 Civ, 1739 (DLC), 2023 U.S. Dist. LEXIS 40936, at *13 (S.D.N.Y. Mar. 10, 2023)) ("a defendant cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation") (internal quotation marks omitted). Bates has raised no arguments in opposition and has not even mentioned this claim in his opposition brief. See generally Opp. "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that

[13] Although defendants made additional arguments with respect to Bates' First Amendment claim, see Mot. at 15-17, the Court need not reach those points given Bates' failure to demonstrate that his speech was "actually" chilled.

are not defended have been abandoned." Jackson v. Fed. Express, 766 F.3d 189, 196 (2d Cir. 2014). Consequently, the Court grants defendants' summary judgment motion on Bates' failure to intervene claim.

## II. State Law Claims

Bates also brought four state law claims, namely: (i) malicious prosecution under New York state law, (ii) unreasonable search and seizure pursuant to N.Y.C. Administrative Code Sections 8-803 and 8-807, (iii) negligent hiring, retention, or supervision, and (iv) respondeat superior. AC ¶¶ 51-66. Defendants move for summary judgment on each of these claims. We will discuss in each in turn.

### a. Malicious Prosecution

Bates' state malicious prosecution claim will survive for the same reasons as his federal malicious prosecution claim. See supra Discussion Section I.b.; see also Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 . . . are 'substantially the same' as claims for false arrest or malicious prosecution under state law."). Defendants have made no independent argument for dismissal of this claim other than those previously rejected by the Court. Therefore, the Court denies defendants' motion for summary judgment on this claim.

**b. N.Y. Admin. Code § 8-803**

N.Y. Administrative Code Section 8-803 creates a "civil right of action for deprivation of rights" against any "covered individual who, under color of any law, ordinance, rule, regulation, custom or usage, subjects or causes to be subjected, including through failure to intervene, any other natural person to the deprivation of any right that is created, granted or protected by section 8-802[.]" N.Y. Admin. Code § 8-803; see also id. § 8-801 et seq. Section 8-802 protects "[t]he right of natural persons to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure." N.Y. Admin. Code § 8-802; see also id. § 8-807 (right created by Section 8-802 "shall be construed in the same manner as" the right "granted or protected by the fourth amendment of the federal constitution.").

The only argument defendants make in favor of dismissal is that "a finding of probable cause defeats an action for false arrest under New York law and the Fourth Amendment." Mot. at 19-20 (citing Jeanty v. City of New York, 23 Civ. 9472 (JAM), 2024 U.S. Dist. LEXIS 233609, *95-96 (E.D.N.Y. Dec. 28, 2024)); see also Opp. at 17 ("Defendants do not advance any independent argument directed specifically to [the Section 8-803 claim],

instead reiterating their probable cause argument.”). As stated supra, Discussion Sections I.a., I.b., the Court cannot conclude as a matter of law that the officers had probable cause to arrest or charge Bates. Thus, the Court denies defendants’ motion for summary judgment on this claim.

**c. Negligent Hiring**

In his opposition brief, Bates concedes “that the record does not support a claim for negligent hiring, retention, or supervision, and that claim may be dismissed.” Opp. at 17. Consequently, the Court grants defendants’ motion for summary judgment on this claim.

**d. Respondeat Superior**

“The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment.” Judith M. v. Sisters of Charity Hosp., 93 N.Y.2d 932, 933 (1999). Defendants do not argue that the City should not be vicariously liable for Officers Gilliam and Liz’s conduct. See generally Mot.; Reply. Therefore, this claim will also survive.

**CONCLUSION**

For the preceding reasons, defendants’ motion for summary judgment is granted in part and denied in part.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 44.

Dated: July 24, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE